NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| EDWIN J.,<br><br>    Plaintiff,<br><br>        v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Civil Action No. 24-9362 (RK)<br><br>**OPINION** |

**KIRSCH, District Judge**

    **THIS MATTER** comes before the Court on Edwin J.'s [1] ("Edwin" or "Plaintiff") appeal from the Commissioner of the Social Security Administration's (the "Commissioner" or "Defendant") final decision, which denied Edwin's request for Social Security disability and supplemental security income benefits. (ECF No. 1.) The Court has jurisdiction to review this appeal under 42 U.S.C. § 405(g) and reaches its decision without oral argument pursuant to Local Civil Rule 78.1. For the reasons below, the Court **AFFIRMS** the Commissioner's decision.

## I.    BACKGROUND

    In this appeal, the Court must answer the following question: does substantial evidence support Administrative Law Judge Karen Shelton's ("Judge Shelton") determination that Edwin was not disabled?

---

[1] The Court identifies Plaintiff by first name and last initial only. *See* D.N.J. Standing Order 2021-10.

## A.    PROCEDURAL POSTURE

Edwin filed an application for disability insurance benefits and supplemental security income on March 3, 2021. (Administrative Record ("AR") at 200–06, 209–13.)[2] The Social Security Administration (the "Administration") denied the requests initially (*id.* at 111, 116) and after reconsideration (*id.* at 122, 125). Edwin then requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 129.) On June 29, 2023, Edwin appeared by video at a hearing in front of Judge Shelton, wherein she heard testimony from Edwin, who was represented by counsel, and a vocational expert, Jessica Conrad ("VE"). (*Id.* at 39–71.) On October 19, 2023, Judge Shelton issued a written decision finding that Edwin was not disabled. (*Id.* at 18–31.) After receiving notice of Judge Shelton's unfavorable decision, Edwin requested review by the Appeals Council. (*Id.* at 197–98.) On July 26, 2024, the Appeals Council determined that the reasons asserted by Edwin for appeal "do not provide a basis for changing the Administrative Law Judge's decision." (*Id.* at 1.)

This appeal followed. (ECF No. 1.) The Administrative Record was filed on December 9, 2024. (ECF No. 6.) Edwin filed a moving brief (ECF No. 7, "Pl. Br."), the Commissioner responded (ECF No. 9, "Def. Opp.") and Edwin replied (ECF No. 10). The appeal is now ripe for review by this Court.

## B.    JUDGE SHELTON'S DECISION

On October 19, 2023, Judge Shelton issued a decision finding that Edwin was not disabled from his alleged onset date of January 25, 2021 through the date of decision.[3] (AR at 18–31.) At

---

[2] The Administrative Record ("AR") is available at ECF Nos. 6-1 through 6-19. This Opinion will reference only page numbers in the Record without the corresponding ECF numbers.

[3] Plaintiff initially sought Social Security benefits based on an alleged onset date of March 13, 2020. (AR at 200.) In his brief before the ALJ, Plaintiff amended his alleged onset date to January 25, 2021, which was the date he stopped working. (*Id.* at 346; *see also id.* at 50 (hearing transcript).)

the time of the alleged onset date, Plaintiff was fifty-years old, had obtained his GED, and had been previously gainfully employed in a variety of physically demanding jobs, including roofing supervisor, equipment installer, and floor grinder. (*Id.* at 29–30.) Plaintiff testified that he left his most recent job in 2020 after he started "experiencing a lot of fatigue" from pulling heavy objects and walking distances. (*Id.* at 56.) Next, his "shoulder[s] started giving out," which led him to seek professional medical help and ultimately see an orthopedic surgeon for issues with his left shoulder. (*Id.*) Although there is no dispute that Plaintiff injured his shoulders and subsequently underwent a series of surgeries and therapies, the lasting effect of these injuries, including the impact of these injuries on Plaintiff's day-to-day life, were the focus of the ALJ's inquiry in reviewing thousands of pages of underlying medical documents and self-reports.

In reaching her determination that Edwin was not disabled, Judge Shelton applied the five-step process for determining whether an individual is disabled as set forth in 20 C.F.R. §§ 404.1520(a) and 416.920(a). (*Id.* at 19–20.) At Step One, Judge Shelton found that Edwin had not engaged in substantial gainful activity since the alleged onset date, January 25, 2021.[4] (*Id.* at 20 (citing 20 C.F.R. §§ 404,1571 *et seq.*, 416.971 *et seq.*).) At Step Two, Judge Shelton found that Edwin suffered from four severe impairments: (1) soft tissue injury of upper extremity (frozen shoulders and status-post surgery); (2) myocardial infarction and chronic ischemic heart disease; (3) hypertension; and (4) degenerative disc disease of the cervical spine. (*Id.* at 21 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)).)

The ALJ also analyzed five additional impairments, concluding that each one was non-severe. (*Id.* at 21–22.) *First*, although Plaintiff had a body mass index of 35 (*id.* at 21 (citing *id.* at

---

[4] While Edwin *did* earn $5,929 in the first quarter of 2021, this solely represented compensation for work performed prior to the alleged onset date of January 25, 2021. (AR at 21.)

1115–1119)), the ALJ considered the "potential impact of obesity in causing or contributing" to Plaintiff's other existing impairments and found no evidence of "any specific or quantifiable impact" on Plaintiff's functioning. (*Id.* (citing *id.* at 398, 539, 592, 603–04, 724, 731–32, 739, 749, 761, 766, 816–817, 1136, 1296, 1534, 1540, 1607, 1616, 1630).) Accordingly, obesity was a non-severe impairment. (*Id.*) *Second*, the ALJ assessed the impact of an impairment from Plaintiff's hernia surgery in March 2022. (*Id.*) Judge Shelton similarly found this impairment to be non-severe because of a "general absence in the record of findings demonstrating significant ongoing digestive abnormalities or exacerbations" as well as no indication that the hernia surgery more than minimally affected Plaintiff's ability to work. (*Id.* (citations omitted).)

*Third,* Judge Shelton found no severe impairment resulting from Plaintiff's "acute episode of gout" in 2023 and bilateral foot pain. (*Id.* at 21.) Plaintiff's gout had been treated and was not recurring. (*Id.* (citing 1107–1128 (emergency department medical records, June 15, 2023).) *Fourth*, despite Plaintiff's diagnosis of "chronic obstructive pulmonary disease and asthma," he was "prescribed inhalers for help with breathing" which "improved his respiratory symptoms." (*Id.* at 22.) Judge Shelton found that there was a "general absence in the record" of any ongoing respiratory abnormalities, need for invasive treatment, or more than minimally negative impacts on Plaintiff's ability to work. (*Id.* (citing *e.g., id.* at 398, 539, 592, 603–04, 724, 731–32, 739, 749, 761, 766, 816–17, 1136, 1296, 1534, 1540, 1607, 1616, 1630).) *Finally,* although the ALJ acknowledged that Plaintiff sought treatment for lower back pain, she cited to Plaintiff's medical records showing that, according to a September 2022 physical examination, Plaintiff could "ambulate on heels, on toes, and tandem without loss of balance." (*Id.* at 22 (citing *id.* at 828).) Despite the findings of non-severity as to the aforementioned five impairments, Judge Shelton

nonetheless considered them when determining Plaintiff's ultimate residual functional capacity. (*Id.*)

At Step Three,[5] Judge Shelton determined that Edwin did not have an "impairment or combination of impairments" that qualified under the Administration's limited impairments. (*Id.* at 22–23 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).)

Then, as a precursor to Step Four, Judge Shelton determined that Edwin had the Residual Functional Capacity ("RFC") to perform "light work with additional reaching, postural, and workplace environmental limitations." (*Id.* at 27.) These additional limitations included Edwin's capacity to lift limited weight at waist level but not overhead and not from the floor; stand, walk, and sit for six hours in an eight-hour workday; only occasionally balance, stoop, kneel, and crouch; and never reach bilaterally overhead (but can frequently reach in all other directions. (*Id.* at 23.)[6]

As required, Judge Shelton began by accounting for Edwin's alleged symptoms and assessed whether those allegations were consistent with the medical evidence in the record. (*See id.* at 24.)

Citing to Edwin's Function Report, filed with the Administration in September 2021, Judge Shelton noted that Edwin alleged he could not push, pull, carry lift, or reach because of pain in his shoulders; struggled with personal care and grooming because of difficulty using his arms; and could only walk for a quarter mile before needing to rest for at least 15 minutes (*Id.* at 24 (citing

---

[5] Plaintiff does not contest the findings at Step 3. (*See generally* Pl. Br.)

[6] Specifically, the ALJ determined Edwin's RFC as:

> lift and carry 20 pounds occasionally and 20 pounds frequently, but at waist level, not overhead and not from the floor; and stand and walk for six hours in an eight-hour workday and sit for six hours in an eight-hour workday. He can occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; occasionally balance, stoop, kneel, and crouch; and never crawl. He can never reach overhead bilaterally but can frequently reach in all other directions. He must avoid and have less than occasional exposure to extreme heat, humidity, or pulmonary irritants such as chemical fumes.

(AR at 23.)

*id.* at 269–73).) Edwin further testified that that he could not work because his ability to lift and carry was extremely limited—as indicated by the fact that he had recently dropped a gallon of milk after carrying it only 15 steps. (*Id.* (citing *id.* at 57).) Plaintiff further testified as to his inability to keep a tight grip on anything due to pain radiating from his shoulders, as well as recent neck pain, chest pain, and arm weakness. (*Id.*)

However, the ALJ ultimately did not credit Plaintiff's allegations and testimony, finding that the "objective medical evidence and the claimant's treatment history are not entirely consistent with the allegations of the severity of physical functional limitations." (*Id.*) Specifically, Judge Shelton pointed to a myriad of physical exams that showed "normal gait, good to full motor strength, and intact sensation and coordination." (*Id.* (citing *id.* at 398, 539, 592, 603–04, 724, 731–32, 739, 749, 761, 766, 816–17, 1136, 1296, 1534, 1540, 1607, 1616, 1630).) Some of Edwin's own testimony, the ALJ explained, also contradicted his allegations as to his difficulties. Specifically, Edwin had expressed an ability to write with a pen or pencil, walk around a lake, go places with his girlfriend and her children, make simple meals, dress and bathe independently, and go shopping and to appointments unaccompanied. (*Id.* at 26[7] (citing *id.* at 269–73, 497).)

Judge Shelton painstakingly reviewed a mountain of medical data from Edwin's visits with various medical practitioners and found them to contradict his claims of disability:

- A **February 2021** cardiac catheterization study "showed unremarkable findings, with no significant coronary artery disease, patent stents in the left anterior descending and circumflex arteries, and normal left ventricle systolic function." (*Id.* at 25 (citing *id.* at 545).)

- After undergoing a procedure for left shoulder arthroscopy in **March 2021**, Plaintiff was told twice that he should go to physical therapy to improve the pain and stiffness in his shoulder. (*Id.* at 26 (citing *id.* at 404, 409).) By July, Plaintiff

---

[7] Two pages of the ALJ's opinion appear to have been inadvertently swapped during the filing of the Administrative Record. Page 25 of the AR is page 9 of the ALJ's opinion, while page 26 of the AR is page 8 of the ALJ's opinion. (*See* AR at 25–26.)

"had functional range of motion of the left shoulder with no rigidity." (*Id.* (citing *id.* at 414, 417, 419).)

- An **October 2021** consultative examination revealed that Edwin, despite having decreased range of motion in his shoulder, had intact sensation and dexterity in his hands, full grip and pinch strength, and full strength, full range of motion, and intact sensation in his lower extremities. Plaintiff also had a normal gait without use of an assistive device, good hand-eye coordination, and abilities to heel walk, toe walk, and squat. (*Id.* at 27 (citing *id.* at 496–500).)

- In **February 2022**, Edwin underwent a procedure for right shoulder arthroscopy and rotator cuff repair, after which he participated in physical therapy. A month later, although Plaintiff still experienced some shoulder stiffness, he had "no other acute complaints." (*Id.* at 26 (citing *id.* at 592).) Another follow-up appointment in May 2022 showed that Plaintiff had "full range of motion" in his right shoulder. (*Id.* (citing *id.* at 811).) A physical examination showed additional recovery including "full strength" of the upper extremities, except for "slightly reduced bilateral shoulder abduction strength." (*Id.* (citing *id.* at 828).)

- In **November 2022**, after reportedly experiencing headaches, dizziness, nausea, and chest pain, Plaintiff underwent a cardiac catheterization procedure that "showed normal coronary arteries" that led to Edwin being "discharged to home the next day in stable condition." (*Id.* at 25 (citing *id.* at 1276).) Plaintiff otherwise denied significant ongoing chest pains or shortness of breath. (*Id.* at 25, 27 (citing *id.* at 398, 539, 592, 603–04, 724, 731–32, 739, 749, 761, 766, 816–17, 1136, 1296, 1534, 1540, 1607, 1616, 1630).)

- Following a procedure for disc arthroplasty in **February 2023**, care providers noted that recovery could take time and recommended physical therapy while further remarking that during a physical exam Edwin showed "normal gait, with an ability to walk on heels and toes, normal muscle bulk with no atrophy, normal motor strength in all extremities, intact sensation and coordination, and grossly normal range of motion." (*Id.* at 25 (citing *id.* at 1570).)

All told, Judge Shelton found that despite Plaintiff's allegations of "extreme limitations in standing, walking, sitting, and lifting," the medical findings demonstrated "normal gait, good to full motor strength, intact sensation and coordination, and adequate control of cardiac symptoms with medication," and the many activities of daily living also evidenced substantial ability. (*Id.* at 27.) Accordingly, even with his impairments, Judge Shelton found that Edwin could perform a limited range of light work. (*Id.*)

Judge Shelton next evaluated the medical opinions and prior administrative medical findings before her: *first,* Drs. Esther Tomor and Toros Shahinian opined, *inter alia,* that Edwin could lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for about six hours in an eight-hour workday, and sit for about six hours in an eight-hour workday. (*Id.* at 27 (citing *id.* at 77, 85, 92, 100).) Judge Shelton found these opinions to be persuasive. (*Id.* at 27–28.) *Second,* Dr. Juan Carlos Cornejo agreed, opining, *inter alia,* that Edwin was "not limited from walking and standing with reasonable breaks; would be able to sit for a reasonable amount of time with needed breaks; [and] has no significant balance limitations and good functionality of his right and left hands." (*Id.* at 28 (citing *id.* at 500).) Judge Shelton found also found this opinion to be persuasive. (*Id.*) *Third,* in stark contrast to the credited medical opinions, Edwin's primary care provider, Polino Sasso, FNP, claimed, *inter alia,* that Edwin could only "sit for 30 minutes, stand for 30 minutes, and walk for 30 minutes in an eight-hour workday," "must alternate between sitting and standing every five minutes" and "must lie down for 30 minutes every hour." (*Id.* (citing *id.* at 2161).) Judge Shelton found this third opinion to be unpersuasive. (*Id.*)

As a final step in determining Edwin's RFC, the ALJ reviewed a letter submitted by Evelyn Quervalu, Plaintiff's friend. Ms. Quervalu described Edwin's "struggle[]" with his medical condition in his daily life, based on her observations from being around him "for [t]he most part of the last 4 years." (*See id.* at 29 (citing *id.* at 314–15).) Judge Shelton found these statements to be inconsistent with the objective medical record, including physical exam findings. (*Id.* (citing *id.* at 398, 494–500, 539, 592, 603–04, 724, 731–32, 739, 749, 761, 766, 816–17, 1136, 1276, 1296, 1316, 1457, 1534, 1540, 1607, 1616, 1630, 2063).)

Moving to Step Four, Judge Shelton found that Edwin was unable to perform any of his past work as either a roofing supervisor, equipment installer, or floor grinder. (*Id.* at 29–30 (citing 20 C.F.R. §§ 404.1565 and 416.965).)

Finally, at Step Five, accounting for Edwin's RFC, age, education, and work experience, in conjunction with testimony offered by the VE at the June 29, 2023 hearing, Judge Shelton found that there were jobs "that exist in significant numbers in the national economy" that Plaintiff could perform. (*Id.* at 30–31 (citing 20 C.F.R. §§ 404.1569, 404.1569a, 416.969, 416.969a).) Specifically, the VE testified—and the ALJ concluded—that Edwin could work as a hand packager, a cashier, or a small parts assembler. (*Id.*) Accordingly, Judge Shelton found that Edwin had not been disabled from his alleged onset date of January 25, 2021 through the date of her decision. (*Id.* at 31.)

## II.    LEGAL STANDARD

### A.    STANDARD OF REVIEW

The Court reviews the Commissioner's final decision to determine whether the Commissioner's findings are "supported by substantial evidence." 42 U.S.C. § 405(g). If the Appeals Council denies a claimant's request for review, "the ALJ's decision is the Commissioner's final decision." *Matthews v. Apfel,* 239 F.3d 589, 592 (3d Cir. 2001) (citation omitted). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (quoting *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). Put differently, "[i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel,* 225 F.3d 310, 316 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 422 (3d Cir. 1999)). This evidentiary threshold "is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).

The scope of the Court's review of the ALJ's decision is "quite limited." *Rutherford*, 399 F.3d at 552. On review, the Court may not "re-weigh the evidence or impose [its] own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently." *Fargnoli v. Massanari,* 247 F.3d 34, 38 (3d Cir. 2001) (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)).

## B.    ESTABLISHING ELIGIBILITY FOR DISABILITY INSURANCE BENEFITS

A claimant may establish disability under the Social Security Act by proving that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ applies a well-established "five-step sequential evaluation process," which requires considering whether the claimant:

> (1) is engaged in substantial gainful activity; (2) suffers from an impairment or combination of impairments that is "severe"; (3) suffers from an impairment or combination of impairments that meets or equals a listed impairment; (4) is able to perform his or her past relevant work; and (5) is able to perform work existing in significant numbers in the national economy.

*McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citing 20 C.F.R. §§ 404.1520(a)–(f), 416.920(a)–(f)).[8] The claimant bears the burden at the first four steps, at which point it shifts to the Commissioner at Step Five. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)).

---

[8] This five-step process applies to both applications for disability insurance benefits and supplemental security income. *McCrea*, 370 F.3d at 360 n.3.

## III.   DISCUSSION

Edwin appeals Judge Shelton's determination of non-disability. (*See* ECF No. 1.) Edwin raises three issues on appeal: *first*, that Judge Shelton failed to consider Plaintiff's extensive surgical history, physical limitations, and medical evidence when determining that Edwin could sustain "light work;" *second*, that Judge Shelton improperly minimized the severity of Edwin's symptoms; and *third*, that Judge Shelton erroneously discounted the medical opinion of Ms. Sasso. (Pl. Br. at 4–5.)[9] For the reasons explained below, the Court finds that the Commissioner's conclusions are supported by substantial evidence.

### A.   LIGHT WORK DETERMINATION

Plaintiff first contests Judge Shelton's determination that Edwin was capable of performing "light" work, arguing that the ALJ (i) failed to account for Edwin's limitations in pushing, pulling, and manipulation, (ii) cherry picked evidence, (iii) improperly relied on vocational analysis, and (iv) should have found that Edwin was only capable of sedentary work. (*Id.* at 18–20.) The Commissioner responds that Judge Shelton appropriately considered and sufficiently articulated her reliance on physical exam findings, treatment notes, diagnostic studies, prior administrative medical findings, and opinions of the consultative examiner in concluding that Edwin's RFC should include light work. (Def. Opp. at 10.)

"RFC is what an individual can still do despite his or her functional limitations and restrictions caused by his or her medically determinable physical or mental impairments." SSR 96-09p. Importantly, it is the role of the ALJ—not the Court—to weigh the evidence in the record and determine Plaintiff's appropriate RFC. *See* 20 C.F.R. § 404.1546(c). Although an RFC must be

---

[9] Since Plaintiff's brief is not paginated, the Court cites to Plaintiff's brief using the page numbers in the CM/ECF header.

11

"accompanied by a clear and satisfactory explication of the basis on which it rests," the ALJ need not "make reference to every relevant treatment note in a case where the claimant . . . has voluminous medical records." *Fargnoli*, 247 F.3d at 41–42; *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Should potentially conflicting evidence exist in the record, an ALJ must "give some indication of the evidence which [she] rejects and [her] reasons for discounting such evidence." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000). Indeed, an ALJ "need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and [her] conclusions." *Peter G. v. Comm'r of Soc. Sec.*, No. 23-3797, 2024 WL 3518117, at *9 (D.N.J. July 24, 2024) (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010)). The Court's role on appeal is only to evaluate whether substantial evidence supports the RFC. *See Burns v. Barnhart*, 312 F.3d 113, 129 (3d Cir. 2002).

Edwin's various contentions against Judge Shelton's RFC determination boil down to a single argument: that there is evidence in the record that could have supported a different RFC. (*See, e.g.*, Pl. Br. at 19 ("The ALJ selectively cited isolated findings, such as Plaintiff's ability to walk around a lake, while ignoring the overwhelming evidence of chronic pain, reduced range of motion, and functional deficits.").) These arguments ignore the deference this Court must give the ALJ. Even if there is *some* evidence in the record to support a more sedentary RFC, "[t]he ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *See Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360).

Here, Judge Shelton clearly and satisfactorily explained the basis for her RFC decision. *See Fargnoli*, 247 F.3d at 41. In nearly six single-spaced pages, the ALJ carefully considered Plaintiff's alleged symptoms, including his own reports that he could not push, pull, carry, lift or

reach; that he had difficulty using his arms; that he could not drive due to shoulder pain; that he could only walk a quarter of a mile before needing to rest; that he had dropped a gallon of milk after carrying it fifteen steps; and that he could not keep a tight grip on anything. (*See* AR at 24.) However, Judge Shelton appropriately found that there was ample objective medical evidence that contradicted Edwin's own self-serving statements and testimony. (*See id.* at 24–27.) For example, whereas Edwin complained of a very limited ability to lift and reach, which he contended would inhibit his capacity to perform light work, Judge Shelton pointed to reports from 2022 wherein Dr. David Dickerson of Performance Orthopaedics and Sports Medicine found that Edwin had a "full range of motion" in his shoulder and was "healing well" from his surgeries. (*See, e.g., id.* at 603–04.) Additional records provided by Ocean Health Initiatives, Inc. showed that in 2021, after the alleged disability onset date, Edwin had "normal movement of all extremities." (*See, e.g., id.* at 749, 761.) In March 2023, just a few months prior to Edwin's testimony before Judge Shelton about his debilitating inability to lift his arms, examination notes from Princeton Brain, Spine and Sports Medicine showed that he had "normal range of motion." (*Id.* at 1570.) Judge Shelton cited to and explained these findings throughout her decision.

As another example, Judge Shelton found that after Edwin sought treatment for neck pain and reported numbness radiating to his upper extremities, a May 2022 MRI showed "no nerve root or cord impingement." (*Id.* at 26 (citing, *e.g., id.* at 817 ("There is no nerve root or cord impingement.")).) Plaintiff contends that this finding is a "mischaracteriz[ation]" since there were "clear findings of cord compression and severe stenosis." (Pl. Br. at 19.) This argument is unpersuasive, however, because the ALJ was merely quoting the record—which explicitly indicated no nerve root or cord impingement—and because the ALJ accounted for Plaintiff's stenosis elsewhere in her decision. (*See* AR at 25–26.)

13

Plaintiff cites to what he calls "overwhelming evidence of chronic pain, reduced range of motion, and functional deficits," (*see* Pl. Br. at 19 (citing AR at 269, 408, 828)), but Judge Shelton did not err in finding a light work RFC in consideration of the evidence in the record. To substantiate Edwin's limited range of motion, he first cites to his *own* Function Report—which Judge Shelton cited and discredited as inconsistent with objective medical records. (*See* AR at 269; *id.* at 24.) The second citation, to a 2021 medical examination, indicates that Edwin had limited range of motion in his left shoulder, but *full range of motion* in his right shoulder. (*Id.* at 408.) This evidence, too, supports the ALJ's conclusion that Edwin's subjective complaints of a total inability to use his shoulders was inconsistent with the objective medical findings. Only Plaintiff's third record citation indicates some decreased range of motion. (*See id.* at 828.) Not only is this evidence hardly "overwhelming," but the ALJ was not required to discuss every single piece of evidence specifically. *See, e.g., Peter G.*, 2024 WL 3518117, at *9.[10]

### B.    EDWIN'S SYMPTOMS

Plaintiff next contends that the ALJ improperly discounted his subjective symptoms by "selectively relying on isolated instances of higher activity levels while disregarding the totality of the evidence." (Pl. Br. at 20.) As Plaintiff correctly states, SSR 16-3p directs the Commissioner to consider Plaintiff's "own description or statement of . . . [his] physical or mental impairment." *See* SSR 16-3p. These statements about symptoms "will not alone establish" disability, but might, in conjunction with other medical evidence, lead to a finding of disability. *See* 20 C.F.R.

---

[10] Plaintiff also contends that the ALJ's decision contravened two Social Security regulations, though both are inapplicable here. *First*, Plaintiff avers that Judge Shelton failed to account for pushing, pulling, and manipulative limitations, as required by SSR 96-9p, but this regulation is only about *unskilled sedentary jobs*, not light work jobs. *Second*, Plaintiff cites to a table that requires a finding of disability in certain instances, but this table similarly applies only to work at a sedentary level. (Pl. Br. at 19–20); 20 C.F.R. Subpart P, App. 2, Tbl. 1, R. 201.14.

§ 416.929(a); *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) ("The ALJ has wide discretion to weigh the claimant's subjective complaints."). The administrative regulations articulate a two-step process that the Commissioner must follow to determine whether a claimant's alleged symptoms limit a claimant's ability to work. SSR 16-3p.

The evaluation process begins once the claimant states his subjective symptoms. *Id.* ("We define a symptom as the individual's own description or statement of his or her physical or mental impairments."). In the first step of the process, the ALJ must determine "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." SSR 16-3p; *see also Hartranft*, 181 F.3d at 362. Second, "if the ALJ finds that such an impairment exists, the ALJ must 'evaluate the intensity and persistence' of the symptoms and the effects that those symptoms have on the individual's ability to work." *Lori C. v. Comm'r of Soc. Sec.*, No. 23-4369, 2024 WL 4803787, at *9 (D.N.J. Nov. 15, 2024) (citation omitted). An ALJ "has wide discretion to weigh the claimant's subjective complaints [] and may discount them when they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citations omitted). "Examples of objective evidence include whether a claimant has sought treatment, or taken medication, to alleviate their pain." *Id.*

Judge Shelton appropriately followed the two-step process. First, the ALJ determined that Edwin's medically determinable impairments—including his soft tissue injury, myocardial infarction and chronic ischemic heart disease, hypertension, degenerative disc disease, obesity, umbilical hernia, bilateral foot pain, lower back pain, and chronic obstructive pulmonary disease and asthma— "could reasonably be expected to cause the alleged symptoms." (AR at 24.) As to the second step, however, Judge Shelton found that Plaintiff's statements "concerning the

15

intensity, persistence, and limiting effect of these symptoms" were "not entirely consistent with the medical evidence and other evidence in the record." (*Id.*)

Plaintiff attempts to undermine this finding based on two separate arguments: *first*, that there was sufficient evidence that *supported* Plaintiff's statements concerning intensity, persistence, and limiting effect, and *second*, that the ALJ should not have considered certain evidence that she found to contradict Plaintiff's statements. (*See* Pl. Br. at 20–23.) The evidence that Plaintiff contends supports his statements mostly consists of additional statements that *Plaintiff made himself* elsewhere in the record. For example, Plaintiff cites to his own hearing testimony where he explained that he could not carry a gallon of milk for 15 steps without dropping it and asserted that he had pain generating down his arm that precluded him from keeping a tight grip. (*Id.* at 21 (citing AR at 57–58 (hearing transcript).) Plaintiff also cites to the record of his own self-reports. (*Id.* (citing AR at 269 ("My shoulders do not allow me to raise my arms, extend, or pull."); 270 ("For the most part, I make sandwiches . . . I have to keep items where I don't have to reach or raise my arms to get them.")).) By definition, these statements in Edwin's own words are not objective evidence; they are just his claimed symptoms. *See* SSR 16-3p. The ALJ did not err by not considering them at this step.

Plaintiff also argues that some medical evidence in the record supports his position, and that Judge Shelton did not sufficiently consider that evidence. The mere fact that *some* medical exists to support a contrary position does not mean that the ALJ erred in her determination. *See Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986) ("While there is other evidence in the record that could support a finding of disability . . . [the Court's] inquiry is not where the ALJ *could have* reasonably made a different finding based on the record. Rather, we must review whether the ALJ's *actual findings* are supported by substantial record evidence." (emphasis added).) Judge

Shelton's determination was indeed supported by substantial evidence, including a significant amount of evidence in the record, which she cited.

Plaintiff next takes issue with Judge Shelton's consideration of what he refers to as "isolated activities." (Pl. Br. at 21–22.) According to Plaintiff, the ALJ relied too heavily on Plaintiff's stated ability to walk around a lake or write with a pen because those activities "do not reflect Plaintiff's ability to perform sustained work-related tasks." (*Id.* (citing AR at 25).) Here, Plaintiff overstates Judge Shelton's reliance on these activities of daily living. Although the ALJ's decision certainly accounted for Edwin's own reported ability to engage in a variety of daily activities (*see* AR at 26), the bulk of her analysis was centered on the many contradictions between Edwin's testimony and the objective medical evidence in the record (*id.* at 24–27). Judge Shelton considered Plaintiff's daily activities as just one of many factors that went into her decision, which was not error. *See Cunningham v. Comm'r of Soc. Sec.*, 507 F. App'x 111, 118 (3d Cir. 2012) ("[I]t is appropriate for an ALJ to consider the number and type of activities in which a claimant engages when assessing his or her residual functional capacity."); *see also* 20 C.F.R. § 404.1529(c)(3)(i) (allowing an ALJ to consider "daily activities" as a "factor[] relevant to [] symptoms, such as pain"); *James R. v. Kijakazi*, No. 22-5030, 2023 WL 6389097, at *8 (D.N.J. Sept. 30, 2023) ("[A]ctivities of daily life may be used by the ALJ as probative evidence of non-disability."); *Diego H. v. Bisignano*, No. 23-3870, 2025 WL 2058144, at *7 (D.N.J. July 23, 2025) (finding ALJ did not err by considering Plaintiff's daily activities alongside other factors).[11]

---

[11] To the extent Plaintiff contends that the activities cited by the ALJ are "sporadic" or "occasional" rather than "daily," (*see* Pl. Br. at 22) the record does not support an inference that any cited activity was merely sporadic. For example, Edwin testified "I'll walk around the lake" (AR at 60) and "I can write" (*id.* at 58).

### C.    MEDICAL OPINIONS

Judge Shelton considered three medical opinions as part of her determination as to whether Ewin was disabled: (i) state consultants Drs. Tomor and Shahinian; (ii) internal medicine consultant Dr. Cornejo; (iii) and Ms. Sasso, a Family Nurse Practitioner (FNP) and Edwin's primary care provider. (AR at 27–29.) The ALJ found the first two opinions persuasive, and the third opinion unpersuasive. (*Id.*) On appeal, Plaintiff contests only Judge Shelton's evaluation as to Ms. Sasso's opinion. (Pl. Br. at 23.)

It is not the Court's function to second-guess or substitute its judgment for that of the factfinder ALJ, but rather to ensure, consistent with its limited, circumscribed role, that the findings are supported by substantial evidence in the record. *See Fargnoli,* 247 F.3d at 38. Here, Judge Shelton properly applied the correct legal framework when evaluating the persuasiveness of Ms. Sasso's medical opinion and appropriately incorporated the facts and opinions of each medical professional into her RFC analysis.

When making a disability determination, an ALJ must review and evaluate all medical opinions that are part of the record. *See Burnett*, 220 F.3d at 121. However, not all medical opinions are created equal, or assessed equally. It is the sole province of the ALJ to consider medical opinions, decide how persuasive each medical opinion is, and articulate the persuasiveness of each opinion as part of the written determination. *See Cooper v. Comm'r of Soc. Sec.*, 563 F. App'x 904, 913 (3d Cir. 2014) (citing 20 C.F.R. § 416.927). Before 2017, opinions by treating medical sources were automatically given more weight than those by non-treating sources, otherwise known as the "treating source rule." *See* 20 C.F.R. § 416.927(c)(2) ("Generally, we give more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical

impairment(s)."). For claims filed after March 27, 2017, like the instant matter, the regulations require the Commissioner to consider the following factors when evaluating all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating relationship, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The regulations emphasize that "the most important factors" for the ALJ and Commissioner to consider when evaluating the persuasiveness of medical opinions are the factors of supportability and consistency. *Id.* at §§ 404.1520c(a), 416.920c(a). Accordingly, the ALJ must "discuss supportability and consistency" when articulating his "consideration of medical opinions and prior administrative medical findings." *Lee Ann M. v. O'Malley*, No. 22-1104, 2024 WL 4184486, at *7 (D.N.J. Sept. 13, 2024) (citations omitted). "Supportability" is "the extent to which the medical source's opinion is supported by relevant objective medical evidence and explanations presented by the medical source." *Carolyn N. v. Comm'r of Soc. Sec.*, No. 22-4957, 2023 WL 8271767, at *5 (D.N.J. Nov. 30, 2023) (quotation omitted). "Consistency" is "the extent to which the medical source's opinion is consistent with the record as a whole." *Id.* (quotation omitted).

When an ALJ evaluates a medical opinion, she is not required "to use particular language or adhere to a particular format in conducting [her] analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett*, 220 F.3d at 119–20). Instead, the Court must "ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Id.*

Judge Shelton clearly considered both supportability and consistency in her evaluation of Ms. Sasso's medical opinion. Although Ms. Sasso had been treating Plaintiff since at least September 2020 (*see* AR at 773), her official opinion for the purposes of Plaintiff's disability determination took the form of a single page with checkboxes. (*See* AR at 2161 (dated May 11, 2023).) Ms. Sasso first opined that Edwin could lift and carry a "sub-sedentary" amount of weight—up to five pounds occasionally and nominal weight frequently. (*Id.*) Next, Ms. Sasso determined that Edwin could sit, stand, and walk for just 30 minutes each in an 8-hour work-day. (*Id.*) Ms. Sasso then checked boxes indicating that Plaintiff was required to alternate sit/stand every five minutes away from his work station, would need to lie down at unpredictable intervals hourly for 30 minutes, and could never twist, stoop, crouch, climb stairs, climb ladders, reach, or push and pull. (*Id.*) According to Ms. Sasso's form opinion, Plaintiff would need to elevate his legs to waist level every time he sits, would need breaks five or more times throughout the day (not including lunch and two fifteen-minute breaks), and would only be able to focus continuously for 0-59 minutes at a time. (*Id.*) In the single text box on the form, Ms. Sasso provided the following "medical findings" supporting her opinion: "multiple musculoskeletal problems, 3 surgeries recent, cardiac [], stent in heart, DM, asthma." (*Id.*)

1. Supportability

As Judge Shelton noted, Ms. Sasso's opinion cited to no "objective medical evidence that would suggest such extreme physical functional limitation." (*Id.* at 28.) Indeed, this opinion is clearly not supportable because it marks the most extreme limitation in nearly every category, even though Ms. Sasso had previously noted more moderate or mild symptoms throughout her years of treating Plaintiff. (*See, e.g.*, *id.* at 766 (January 2021 medical records indicating "normal movement of all extremities" and "normal" strength and tone); 761 (February 2021 medical records indicating

"normal movement of all extremities"); 753 (March 2021 medical records indicating that Plaintiff was "ambulating normally"); 722–24 (May 2022 medical records wherein Plaintiff reported "heavy" exercise, and "no shortness of breath when walking" and "normal gait and station").)

Moreover, "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence a best." *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993). The form Ms. Sasso used to convey her opinion is weak because it does not explain why, despite her prior findings that he could walk and had normal extremity movement, she suddenly found that Edwin could only work in a role that required him to neither walk, nor stand, nor sit for more than 30 minutes at a time.; *see also Whitaker v. Comm'r*, No. 23-535, 2024 WL 1346698, at *1 n.1 (W.D. Pa. Mar. 29, 2024) (noting that the medical professional "did not state what Plaintiff could do for the remaining hours of the workday unaccounted for by her sit, stand, and walk limitations").

2. Consistency

Judge Shelton also considered the consistency factor, concluding that Ms. Sasso's opinion was "inconsistent with the current and complete record as a whole, which likewise does not suggest such extreme physical functional limitation." (AR at 28.) Citing to nearly a dozen other medical exhibits from the extensive record, the ALJ pointed to evidence of Edwin's "normal gait, good to full motor strength, and intact sensation and coordination" as well as "treatment notes, physical exam findings, and diagnostic studies demonstrating adequate control of cardiac symptoms with medication." (*Id.* at 28–29 (citing *e.g.*, *id.* at 398 (Performance Orthopaedics & Sports Medicine), 494–500 (Momentum Medicine Plus LLC); 539 (Cardiology Associates of Ocean County); 592, 603–04 (Performance Orthopaedics & Sports Medicine); 816–17 (same); 1136 (CentraState Medical Center); 1276, 1296, 1316; 1457 (RJWBarnabas Health); 1534, 1540 (Cardiology Associates of Ocean County); 2063 (CentraState Medical Center).)

Plaintiff argues that despite the many medical findings that were inconsistent with Ms. Sasso's opinion, there are also some that were consistent. Given Judge Shelton's exhaustive analysis of a complex record, the fact that some evidence goes the other way is of no moment. Indeed, as stated, "an ALJ's decision does not lack substantial evidence simply because the ALJ might have reached a different result." *Gunn v. Kijakazi*, 705 F. Supp. 3d 315, 326 (E.D. Pa. 2023); *see also Simmonds*, 807 F.2d 54, 58 (3d Cir. 1986) ("While there is other evidence in the record that could support a finding of disability . . . [the Court's] inquiry is not whether the ALJ *could have* reasonably made a different finding based on the record. Rather, we must review whether the ALJ's *actual findings* are supported by substantial record evidence." (emphasis added).) Without question, the ALJ's "actual finding[]," namely that Ms. Sasso's single-page form opinion was unpersuasive, is supported by substantial evidence. *See Simmonds*, 807 F.2d at 58.

Judge Shelton's evaluation of the various medical opinions, as well as her overall engagement with the underlying medical and administrative record, bespeak a detailed and exhaustive analysis of Edwin's disability claim. The ALJ's determination of non-disability is supported by substantial evidence.

## CONCLUSION

Having reviewed the record as a whole, the decision of the Commissioner is **AFFIRMED**. An appropriate Order accompanies this Opinion.

**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: September 2, 2025